2020 IL App (1st) 182628

FIRST DISTRICT
SIXTH DIVISION
September 18, 2020

No. 1-18-2628

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2016 CR 1030001 |
| | ) | |
| QUENTIN BOBO, | ) | Honorable |
| | ) | Matthew Coghlan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Quentin Bobo, appeals his convictions after a bench trial of aggravated unlawful use of a weapon, unlawful use of a weapon by a felon, and being an armed habitual criminal (AHC), and his sentence of 11 years' imprisonment. On appeal, defendant contends that (1) the trial court improperly denied defendant assistance of counsel during proceedings pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), (2) the State failed to prove beyond a reasonable doubt that he possessed a firearm where no physical evidence connected defendant to the recovered gun, (3) the State failed to prove his AHC conviction beyond a reasonable doubt where the State merely introduced a certified copy of his prior conviction for aggravated robbery, an offense not listed as a forcible felony as required by section 24-1.7 of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.7 (West 2016)), and (4) his sentence was excessive and based on an improper double enhancement. For the following reasons, we affirm defendant's aggravated unlawful use of a

weapon and unlawful use of a weapon by a felon convictions, vacate his AHC conviction, and remand for resentencing.

¶ 2                                    I. JURISDICTION

¶ 3     The trial court sentenced defendant on August 29, 2018, and denied his motion to reconsider sentence on November 27, 2018. Defendant filed a notice of appeal on November 27, 2018. Accordingly, this court has jurisdiction pursuant to Article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. July 1, 2017), governing appeals from a final judgment of conviction in a criminal case entered below.

¶ 4                                    II. BACKGROUND

¶ 5     Defendant was charged by indictment with being an AHC, with unlawful use of a weapon by a felon, and with aggravated unlawful use of a weapon. Prior to trial, the trial court granted defendant's request to represent himself. Defendant filed a *pro se* motion to quash arrest and suppress evidence. At the hearing, Officer Andrew Kovac testified that on the morning of June 15, 2016, he was riding as a passenger in an unmarked police vehicle and was accompanied by two other officers. As they drove down Madison Street, Officer LaDonna Simmons observed a man with a gun walking in the other direction. They turned around, and he and Simmons saw defendant standing near the open driver's side door of a white car, pointing a black gun at another man while holding the man with his other hand. When defendant saw the officers, he dropped the gun a couple feet away. The other man ran toward the officers, and the officers recovered the gun. Officer Kovac testified that he saw two men in the alley. Officer Simmons testified that she saw defendant and one man on the driver's side of a white car and a third man near the front of the car who ran away

from the scene. The trial court denied defendant's motion. Defendant subsequently requested that counsel be appointed to represent him and an assistant public defender was assigned to defendant.

¶ 6     At trial, Officer Kovac testified that on June 15, 2016, he was in an unmarked vehicle with Officers Mike Wroble and LaDonna Simmons, in the area of Madison Street and Mason Avenue in Chicago. He was riding in the front passenger seat of the vehicle when Officer Simmons alerted them about something she had observed. Officer Wroble turned the vehicle around and, as they travelled down the south alley of Madison Street, Officer Kovac observed "defendant holding a gun to an individual's head." He identified defendant in court. It was 10:37 a.m., and the officers were about 20 feet away. Nothing interfered with Officer Kovac's view of the incident.

¶ 7     The officers exited the vehicle and Officer Kovac looked at defendant "as he's shaking the individual with the gun to his head." The officers drew their weapons and announced themselves. Defendant looked in Officer Kovac's direction "and with his right hand flick[ed] the gun out of his hand." Officer Kovac testified that the gun, which had an extended magazine, "landed in a patch of grass" three to five feet away. Defendant released the man he was shaking, got into the driver's seat of a nearby vehicle, and closed the door. The officers approached and asked defendant to exit the vehicle. Defendant complied and was placed in handcuffs. The man defendant had been shaking was detained by Officer Simmons.

¶ 8     Officer Kovac recovered the gun from the area where he had seen defendant toss it from his hand. Officer Kovac removed a bullet from the chamber and placed the gun in a brown paper bag. He inventoried the weapon at the police station. A second firearm was recovered from a nearby garage after notification from a concerned citizen, and that weapon was also inventoried.

The firearm Kovac recovered was tested for fingerprints. However, no ridge impressions were recovered from the gun.

¶ 9     The State presented certified copies of defendant's prior felony convictions for intimidation under case number 06CR232401, and for aggravated robbery under case number 05CR1295601. The parties also stipulated that defendant had never been issued a Firearm Owner's Identification Card, or a conceal and carry license by the State of Illinois. The parties further stipulated that the firearm recovered and inventoried under number 13707844 was a black, .40 caliber Glock model 23 semiautomatic pistol, with black tape wrapped around the lower portion of the extended magazine. The firearm was loaded with at least 15 rounds of ammunition.

¶ 10     The State moved for a directed finding, which the trial court denied. After admonishment by the court, defendant testified in his own defense.

¶ 11     Defendant testified that on the morning of June 15, 2016, he was at his uncle Yarmell Ruffin's apartment on Mason Street. He was waiting to catch a bus so he could go home to Woodridge. Connected to the apartment building was a corner store where several people were outside selling drugs. As defendant exited the building, two officers approached and arrested defendant and two other men he did not know. After checking their computers, the officers learned that defendant was on parole and there was an investigatory alert for him. Defendant explained to the officers that he was visiting his uncle.

¶ 12     Defendant was transported to the police station and held for 48 hours, as the officers questioned him. They asked him about his uncle, about a nearby robbery, and about whether defendant knew about any guns or drugs stored in the area. The officers suggested that defendant could help himself by offering evidence. Defendant denied that he had a gun at any point that day,

and he denied that officers questioned him about a gun at the scene. Defendant testified that Ruffin was inside when defendant was arrested.

¶ 13    On cross-examination, defendant stated that Officer Kovac was not present when he was arrested and that he did not recognize him. Defendant denied being arrested in the alley and denied having a dispute with his uncle that day.

¶ 14    The trial court "found Officer Kovac to be a credible witness and accept[ed] his version of the facts." Furthermore, defendant's testimony that he was asked about his uncle at the police station corroborated testimony that an investigation was "going on with regard to who was this other individual being held at gunpoint and why was the defendant doing that." The court found defendant "guilty on all charges."

¶ 15    Defendant filed a posttrial motion for a new trial and informed the trial court that he wished to discharge his attorney and proceed *pro se*. The court admonished defendant regarding the sentencing ranges for his offenses and found that he was entitled to have the assistance of counsel for posttrial motions and for sentencing. Defendant reiterated his wish to represent himself, and the court allowed him to proceed *pro se*. On September 25, 2017, defendant filed a motion for a new trial in which he alleged ineffective assistance of trial counsel. On December 1, 2017, the court held a *Krankel* hearing, which we set forth in detail below as we address defendant's issues on appeal. After numerous hearings, the trial court disposed of defendant's ineffective assistance of counsel claims without appointing counsel to represent him. The court also denied defendant's motion for a new trial.

¶ 16    At the sentencing hearing, defendant was represented by private counsel. The trial court allowed an amendment to the presentence investigation report to reflect that on January 4, 2006,

defendant was sentenced to six years' imprisonment for three aggravated robbery convictions, rather than for just one conviction. In aggravation, the State argued that defendant's conduct holding a gun with an extended magazine to the head of a person on the streets of Chicago threatened serious harm to another person. The State also cited as aggravation defendant's six additional felony convictions apart from his convictions for aggravated robbery and intimidation that served as predicate offenses for defendant's AHC charge. The State argued that defendant's prior sentences did not deter him from committing other crimes and requested a sentence beyond the minimum of six years.

¶ 17    In mitigation, defense counsel argued that defendant had not committed any violent offenses in the 10 years preceding the present charge and had no history of armed violence. At the time of his arrest, defendant was married, active in the lives of his six children, and worked a steady job as a laborer for Elite Staffing in Bolingbrook. Defendant obtained his high school diploma, briefly enrolled in the College of Du Page, and hoped to take business management and consumer marketing classes. Counsel pointed out that defendant's offense did not result in any injuries and was unlikely to recur, given defendant's lack of a violent criminal history. During pretrial incarceration defendant participated in religious training and storytelling programs. Counsel requested the minimum of six years served at 85%.

¶ 18    In imposing defendant's sentence, the trial court stated that it considered the facts of the case, "defendant's criminal history, social history, education, employment background, financial and family history, [and] psychological history as well, [and] considered his rehabilitative potential." The court continued:

"The defendant has been found guilty of [being an] armed habitual criminal. That has already been enhanced. His possession of a firearm has been enhanced by his prior convictions for intimidation and aggravated robbery. The court learns today that Mr. Bobo, in addition to those, has two additional aggravated robbery charges. Since then he's also done time for felony possession of a controlled substance, a matter which he's serving— he served three years in the Department of Corrections in 2014.

Court does find it aggravating that the defendant had those prior convictions. Those are forcible felonies, in addition to the felony that already enhanced this. The individual who at least indicated defendant was holding a gun on [him] apparently is uncooperative. May have been a suggestion that was the defendant's uncle. He has been unwilling to come to court.

After considering all the factors in aggravation, mitigation judgment is entered on the finding on Count I. Court finds an appropriate sentence to be 11 years in Illinois Department of Corrections. That's served at 85 percent."

¶ 19   Defendant filed this appeal.

¶ 20                                III. ANALYSIS

¶ 21                            A. *Krankel* Hearing

¶ 22   After trial, defendant filed a motion for a new trial and informed the court that he wanted to represent himself. The trial court granted defendant's request and continued the cause. Defendant filed an amended posttrial motion and requested a *Krankel* hearing to address his ineffective assistance of counsel claims. Defendant requested the appointment of counsel to represent him in the proceedings, to which the court replied, "Normally with a *Krankel* hearing,

first the court will make inquiries of your trial attorney. Then if I find it necessary, then I can appoint another lawyer to represent you. I won't do that yet."

¶ 23  On December 1, 2017, the trial court held a *Krankel* hearing with defendant and his trial counsel present. The State did not participate. The court questioned counsel regarding each of the issues defendant raised in his ineffective assistance of counsel claims. We set forth the testimony regarding defendant's claim that counsel failed to call as a witness or subpoena Yarmell Ruffin, the alleged victim in the case, because defendant argues only that issue on appeal.

¶ 24  At the hearing, defendant's trial counsel testified,

> "Mr. Ruffin initially told the police that there was—that he was being robbed. They did not charge that because he subsequently would not respond to them and then changed all of his phone numbers. When they reached out to him, he said he did not want to cooperate in this case. And I was told that by [defendant's] mother, who is, I believe, his sister, the victim's sister, alleged victim."

Defendant confirmed that Ruffin was his mother's stepbrother. He responded to counsel's testimony, stating, "for him to just make a false allegation saying that my mother made a statement like that to him—my mother ain't never told you nothing like that." Defendant stated that he talked to his mother "all the time over the phone." Counsel, however, reiterated that defendant's mother told him that Ruffin did not want to cooperate. In his professional opinion, Ruffin "was of no value for our defense."

¶ 25  Defendant testified that his mother would "make an appearance for that matter." When the trial court asked defendant what Ruffin would have said at trial, defendant answered, "He would basically explain that the situation—how the police wrote it up, that never even transpired period."

¶ 26    At the end of the hearing, the trial court asked defendant if he wanted to argue anything else in his motion. Defendant replied, "Nothing besides everything I argued, your Honor." The trial court continued:

> "Well, I have considered your complaints, I have reviewed the transcripts and [counsel's] performance during the course of the trial, and I have seen his performance in other cases as well. I am of the opinion that your complaints deal with issues of trial strategy, the decision whether or not to—which witnesses to call is a matter of trial strategy."

The trial court "[did] not find that counsel was ineffective in his representation." The matter was continued regarding defendant's remaining posttrial motions.

¶ 27    At the next hearing, defendant's mother, Debra Bobo, appeared as a witness. She testified that Ruffin told her about what happened. He and defendant were having an argument outside and the police came and took them to the police station. Ruffin denied that a gun was involved. The police released Ruffin, and he never returned to the station. Police later called Ms. Bobo's house and told her that they were unable to reach Ruffin by phone. She was able to contact Ruffin, and they spoke on the phone with police in a three-way call, but Ruffin hung up. Ruffin told Ms. Bobo that he would not go to court because he did not press charges. Ruffin then "moved out of town." Ms. Bobo denied that defense counsel asked her about Ruffin. He only spoke with her "about the case" and that he "was gonna try to get the case thrown out."

¶ 28    In response, counsel again stated that he had a brief conversation with defendant's mother and she informed him that Ruffin did not want to get involved.

¶ 29    The trial court decided to set the matter for a hearing. The court wanted to hear from Ruffin to "see what he has to say to complete this record." The court asked Ms. Bobo whether Ruffin could come to court, and she replied, "[m]y brother is not going to come for court." The matter was continued, and the trial court said to Ms. Bobo,

"[H]e is a member of your family. He is somebody that would be more in your control than certainly the State. If he doesn't come to court, I'm going to give that a negative inference as to what he would testify to so I would suggest this is your family, get him in here.

***

Your son has made allegations that his uncle was there. He is a material witness. His lawyer has indicated that he was unwilling to cooperate. I need to determine whether or not his testimony was material, whether or not it would have changed the result of the trial so I'm giving you an opportunity to bring him in."

¶ 30    At the January 12, 2018, hearing, defendant appeared with private counsel, and the court granted his request for a 30-day continuance to locate Ruffin. The trial court also granted continuances on February 15, March 27, April 25, and May 18. On June 11, 2018, the court continued the matter to July 20, 2018, which would be the final date for defendant to bring Ruffin into court to testify.

¶ 31    At the July hearing, the court first addressed the Ruffin issue. When asked whether he had been able to locate Ruffin, defendant's counsel stated that he had not. The court explained that regarding the *Krankel* proceedings, it initially made inquiries of defendant's trial counsel who gave his reasons why he did not call Ruffin as a witness. The court gave defendant "an opportunity to bring in Mr. Ruffin, see whether or not he could offer exculpatory evidence on his behalf." The

court then proceeded to hear argument on the remaining issues in defendant's amended motion for a new trial. The court denied defendant's motion for a new trial, finding that his trial counsel "was not ineffective" and "defendant was not prejudiced."

¶ 32    On appeal, defendant contends that the trial court improperly denied him counsel earlier in the *Krankel* proceedings, and as a result, he was unable to fully litigate his ineffective assistance of counsel claims.

¶ 33    When a *pro se* defendant raises a posttrial claim of ineffective assistance of counsel, the trial court conducts a *Krankel* hearing. *People v. Jolly*, 2014 IL 117142, ¶ 29. The appointment of counsel is not automatically required. Rather, when a defendant presents such a claim, "the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion." *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). Counsel should be appointed, however, if defendant's allegations show possible neglect of his case. *Id.* at 78.

¶ 34    The issue before the reviewing court is "whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel." *Id.* At a minimum, the trial court should make inquiries of trial counsel regarding the facts and circumstances surrounding defendant's ineffective assistance of counsel claims. *People v. Roddis*, 2020 IL 124352, ¶¶ 53-54. In determining whether defendant's claim merits further action, the trial court can also "base its evaluation *** on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." *Moore*, 207 Ill. 2d at 79.

Whether the trial court conducted a proper preliminary *Krankel* inquiry is a legal question subject to *de novo* review. *Roddis*, 2020 IL 124352, ¶ 33.

¶ 35    On December 1, 2017, the trial court conducted a *Krankel* hearing on defendant's *pro se* motion for a new trial, alleging ineffective assistance of trial counsel. With no participation by the State, the court questioned counsel regarding defendant's claim that counsel failed to call as a witness or subpoena Yarmell Ruffin. Counsel explained that Ruffin initially told police he was the victim in the case, but he subsequently stated that he did not want to be involved. Counsel spoke with Ruffin's stepsister and defendant's mother, Ms. Bobo, who confirmed that Ruffin did not want to cooperate in the case. Counsel determined that Ruffin "was of no value for our defense." Defendant responded that if he testified, Ruffin would state that "the situation—how the police wrote it up, that never even transpired period." Defendant told the court that his mother could come to court and testify on the matter. The court determined, based on its inquiries and on counsel's performance during the trial, that the matter concerned proper trial strategy and counsel was not ineffective in his representation. The trial court did not find that there was possible neglect of defendant's case meriting the appointment of new counsel.

¶ 36    Defendant argues, however, that at the next hearing, the trial court reopened the *Krankel* proceedings and allowed Ms. Bobo to testify. The court then continued the matter so that it could hear from Ruffin to "see what he has to say to complete this record." Defendant contends that the trial court should have appointed counsel at this point to represent him in further proceedings.

¶ 37    We disagree. Ms. Bobo's testimony that Ruffin said he was arguing with defendant outside when the police came actually aligns with the State's version of the incident, except for the absence of a gun. Because defendant testified that Ruffin's testimony would support his version of the

events, and contradict counsel's testimony and the State's evidence, the court wanted to hear what Ruffin had to say "to complete this record." The court gave defendant the opportunity "to bring him in" and warned defendant and Ms. Bobo that if they failed to bring Ruffin to court, "I'm going to give that a negative inference as to what he would testify."

¶ 38    After hearing Ms. Bobo's testimony and "reopening" the *Krankel* hearings, the court did not believe possible neglect of defendant's case occurred. Rather, the trial court wanted more evidence relating to the merits of defendant's ineffective assistance claim, which is appropriate in a preliminary *Krankel* inquiry. See *Roddis*, 2020 IL 124352, ¶ 61 (finding that "even in preliminary *Krankel* inquiries, a trial court must be able to consider the merits *in their entirety* when determining whether to appoint new counsel on a *pro se* posttrial claim of ineffective assistance of counsel" (emphasis in the original)). Accordingly, appointment of new counsel for defendant was not required at this point.

¶ 39    Furthermore, defendant was not prejudiced by the court's denial to appoint counsel for the first two hearings. Where the record shows that the trial court made every effort to ascertain the nature and substance of defendant's ineffective assistance claim, and defendant was allowed to present in detail the factual basis of his claim, failure to appoint counsel can be harmless beyond a reasonable doubt. See *Moore*, 207 Ill. 2d at 80-81 (and cases cited therein).

¶ 40    Here, the trial court allowed Ms. Bobo to testify on defendant's behalf and gave every opportunity for defendant to bring in his uncle, who defendant claimed would corroborate his version of the events. The court first asked for Ruffin to appear at the January 12, 2018, hearing, but when defendant asked for more time, the court continued the matter five times, setting July 20, 2018, as the final date. The trial court gave defendant, who had since retained private counsel,

more than six months to find Ruffin and warned him that it would give Ruffin's failure to appear a negative inference regarding the substance of his testimony. After the hearing on July 20, 2018, and after considering all of defendant's posttrial claims, the trial court determined that defendant's trial counsel "was not ineffective" and "defendant was not prejudiced." The record shows that the trial court made a significant effort to explore defendant's claim regarding Ruffin, and gave defendant ample opportunity to present the factual basis of his claim.

¶ 41                                    B. Sufficiency of the Evidence

¶ 42    Defendant next challenges the sufficiency of the State's evidence. When a defendant challenges the sufficiency of the evidence used to convict him, we determine whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). This standard "applies in all criminal cases, whether the evidence is direct or circumstantial." *People v. Jackson*, 2020 IL 124112, ¶ 64.The factfinder determines the credibility of witnesses and the weight to be given their testimony, and this court will not substitute its judgment for that of the jury on these matters. *People v. Brooks*, 187 Ill. 2d 91, 132 (1999). Defendant's conviction will not be overturned unless the evidence "is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt." *People v. Wheeler*, 226 Ill. 2d 92, 115 (2007).

¶ 43    Defendant first contends that his convictions should be reversed where the State presented insufficient evidence that he possessed a firearm. Defendant argues that no physical evidence connected him to the weapon recovered by Officer Kovac. Physical evidence linking defendant with the firearm is not required to establish that he committed the offense. *People v. Williams*, 182

Ill. 2d 171, 192 (1998). If a witness's testimony is otherwise credible, the State need not present additional physical evidence connecting defendant to the firearm. *People v. Campbell*, 2019 IL App (1st) 161640, ¶ 33.

¶ 44    At trial, Officer Kovac testified that he observed defendant holding a gun to a person's head and shaking that person. It was 10:37 in the morning, and Officer Kovac was about 20 feet away, with nothing interfering with his view of the incident. The officers drew their weapons and announced themselves. Defendant looked in Officer Kovac's direction "and with his right hand flick[ed] the gun out of his hand." The gun landed in a patch of grass three to five feet away. Officer Kovac then saw defendant release the man he was shaking, get into the driver's seat of a nearby vehicle, and close the door. When the officers asked defendant to exit the vehicle, he complied and was placed in handcuffs. Officer Kovac recovered the gun from the area where he had seen defendant toss it from his hand.

¶ 45    Since the trial court found Officer Kovac's testimony credible, no other physical evidence was necessary to find defendant guilty of possessing a firearm beyond a reasonable doubt. *Id.* Defendant argues that the officers' testimony was inconsistent in terms of whether there was a third person at the scene and that Officer Kovac's testimony was undermined by defendant's testimony on the circumstances of his arrest. However, inconsistencies in the testimony of eyewitnesses are issues for the factfinder to resolve, as it is the factfinder's function to assess the credibility of witnesses and to resolve discrepancies in the evidence. *People v. Evans*, 209 Ill. 2d 194, 211 (2004). The trial court found Officer Kovac's testimony credible, and we will not substitute our judgment for that of the trial court on this issue. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009).

¶ 46    Furthermore, in making its determination, the trial court need not disregard inferences that flow normally from the evidence, nor " 'search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt.' " *Evans*, 209 Ill. 2d at 212 (quoting *People v. Hall*, 194 Ill. 2d 305, 332 (2000); see *Siguenza-Brito*, 235 Ill. 2d at 229. The trial court is not required to accept defendant's version of the events over competing versions. *People v. Ortiz*, 196 Ill. 2d 236, 267 (2001).The evidence supports the trial court's finding that defendant possessed a firearm. Since this issue is the only one defendant raised to challenge his convictions of aggravated unlawful use of a weapon and unlawful use of a weapon by a felon, we affirm those convictions.

¶ 47    As for his AHC conviction, however, defendant argues that the State's evidence was also insufficient because it used his prior conviction of aggravated robbery as a predicate offense, even though it is not listed as a forcible felony under the Code. Section 24-1.7(a) provides that

> "A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:
>
> > (1) a forcible felony as defined in Section 2-8 of this Code;
> >
> > (2) unlawful use of a weapon by a felon; aggravated unlawful use of a weapon; aggravated discharge of a firearm; vehicular hijacking; aggravated vehicular hijacking; aggravated battery of a child as described in Section 12-4.3 or subdivision (b)(1) of Section 12-3.05; intimidation; aggravated intimidation; gunrunning; home invasion; or aggravated battery with a firearm as described in Section 12-4.2 or subdivision (e)(1), (e)(2), (e)(3), or (e)(4) of Section 12-3.05; or

(3) any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher." 720 ILCS 5/24-1.7(a)(1), (2), (3) (West 2016).

At trial, the State presented certified copies of defendant's prior convictions of intimidation and aggravated robbery. Since aggravated robbery is not listed in the offenses enumerated in subsections (2) and (3), to qualify as a predicate offense, aggravated robbery must be a forcible felony as defined in section 2-8 of the Code. *Id.* § 24-1.7(a)(1).

¶ 48    Section 2-8 of the Code states:

" 'Forcible felony' means treason, first degree murder, second degree murder, predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, robbery, burglary, residential burglary, aggravated arson, arson, aggravated kidnaping, kidnaping, aggravated battery resulting in great bodily harm or permanent disability or disfigurement and any other felony which involves the use or threat of physical force or violence against any individual." *Id.* § 2-8.

Although robbery is listed as a forcible felony, aggravated robbery is not. Thus, for aggravated robbery to be a forcible felony under section 2-8, it must be a "felony which involves the use or threat of physical force or violence against any individual." *Id.*; *People v. Belk*, 203 Ill. 2d 187, 193 (2003) (finding that to qualify as a forcible felony, felonies not specifically enumerated must fall under the residual category as defined in section 2-8). To resolve this issue, we must construe provisions of the Code.

¶ 49    Our primary objective in statutory interpretation is to ascertain and give effect to legislative intent as best indicated by the plain language of the statute. *People v. Davis*, 199 Ill. 2d 130, 135

(2002). Courts should consider the statute in its entirety and keep in mind the subject matter addressed and the legislature's objective in enacting the statute. *Id.* "Moreover, criminal or penal statutes are to be strictly construed in favor of the accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute." *Id.* We review a question of statutory interpretation *de novo*. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 294 (2010).

¶ 50    Robbery is listed in section 2-8 as a forcible felony. Under section 18-1(a) of the Code, "[a] person commits robbery when he or she knowingly takes property *** from the person or presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-1(a) (West 2016).The State argues that because every robbery requires the use or threat of force, and every aggravated robbery requires a robbery, aggravated robbery is "inherently a forcible felony." The State contends that aggravated robbery is merely robbery that occurred under aggravating circumstances.

¶ 51    Our legislature, however, explicitly provided two definitions of aggravated robbery in section 18-1(b) of the Code. Section 18-1(b) states:

> "(1) A person commits aggravated robbery when he or she violates subsection (a) while indicating verbally or by his or her actions to the victim that he or she is presently armed with a firearm or other dangerous weapon, including a knife, club, ax, or bludgeon. This offense shall be applicable even though it is later determined that he or she had no firearm or other dangerous weapon, including a knife, club, ax, or bludgeon, in his or her possession when he or she committed the robbery.

(2) A person commits aggravated robbery when he or she knowingly takes property from the person or presence of another by delivering (by injection, inhalation, ingestion, transfer of possession, or any other means) to the victim without his or her consent, or by threat or deception, and for other than medical purposes, any controlled substance." *Id.* § 18-1(b)(1), (2).

Aggravated robbery in subsection (b)(1) corresponds with the State's argument because it requires committing robbery, as defined in section (a), with aggravating circumstances. Aggravated robbery in subsection (b)(2), however, does not require that a robbery be committed as defined in section (a). This offense does require that a person "knowingly takes property from the person or presence of another." See *id.* § 18-1(a), (b)(2). But subsection (b)(2) says nothing about taking property by "the use of force or by threatening the imminent use of force," as required for robbery in section (a). See *id.* Rather, the taking of property is accomplished "by delivering (by injection, inhalation, ingestion, transfer of possession, or any other means) to the victim without his or her consent, or by threat or deception, and for other than medical purposes, any controlled substance." *Id.* § 18-1(b)(2).

¶ 52    In particular, the taking of property by delivering any controlled substance to the victim by deception does not require "the use or threat of physical force or violence against any individual." *Id.* § 2-8. No power or constraint is exerted upon the victim by taking his or her property in this manner. See *People v. Isunza*, 396 Ill. App. 3d 127, 131 (2009) (quoting the definition of "force" in Black's Law Dictionary 644 (6th ed. 1990) as " '[p]ower, violence, compulsion, or constraint exerted upon or against a person or thing' "). While, as the State argues, an offender may compel a person to ingest an unwanted substance through deception, he or she does not achieve such

compulsion through the use of physical force or violence. This type of aggravated robbery is certainly a serious offense, as indicated by its designation as an aggravated form of the offense. It is not, however, a forcible felony as defined by section 2-8 of the Code.

¶ 53    We find that "use or threat of physical force or violence against any individual" is not inherent in subsection (b)(2)'s definition of aggravated robbery. 720 ILCS 5/2-8 (West 2016). Accordingly, we cannot conclude that defendant's conviction of aggravated robbery was a forcible felony conviction under section 2-8 without evidence of the facts underlying his conviction. See *People v. Carmichael*, 343 Ill. App. 3d 855, 861 (2003).

¶ 54    Qualifying convictions are elements of the offense of AHC. *People v. White*, 2015 IL App (1st) 131111, ¶ 28. The State presented a certified copy of defendant's prior conviction of aggravated robbery as proof of the qualifying offense of a forcible felony. See 720 ILCS 5/24-1.7(a)(1) (West 2016). However, not all forms of aggravated robbery are forcible felonies under section 2-8. The record is silent on the underlying facts of defendant's aggravated robbery convictions and thus does not show whether they constituted a forcible felony. Therefore, we agree with defendant that the trial court erred in finding him guilty of AHC beyond a reasonable doubt, based merely upon his conviction of aggravated robbery. We vacate defendant's AHC conviction and remand for resentencing on his other convictions.

¶ 55    Since we are remanding the cause for resentencing, we need not consider defendant's claims that his sentence was excessive and based on an improper double enhancement.

¶ 56                         IV. CONCLUSION

¶ 57    For the foregoing reasons, defendant's convictions of aggravated unlawful use of a weapon and unlawful use of a weapon by a felon are affirmed. However, we vacate defendant's AHC conviction and remand for resentencing on his remaining convictions.

¶ 58    Affirmed in part and reversed in part.

¶ 59    Cause remanded for further proceedings.

---

**No. 1-18-2628**

---

| | |
|---|---|
| **Cite as:** | *People v. Bobo*, 2020 IL App (1st) 182628 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2016-CR-1030001; the Hon. Matthew Coghlan, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Michael Gentithes, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Clare Wesolik Connolly, and Sean Brady, Assistant State's Attorneys, of counsel), for the People. |

---