2021 IL App (2d) 200040-U
No. 2-20-0040
Order filed December 15, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | Nos. 18-CF-2395       18-TR-28651 |
| v. | ) ) |       18-TR-28652 |
| JOSE AVILA FIERRO, | ) ) | Honorable Charles E. Petersen, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Defendant was properly convicted of aggravated driving under the influence (DUI) based on his committing DUI while his license was revoked due to a prior DUI. The evidence, including failed field sobriety tests, showed that defendant was under the influence of alcohol. Also, the State was not required to prove at trial that defendant's license was revoked due to a prior DUI. However, the State failed to prove a second charge of aggravated DUI—that defendant committed DUI while driving a vehicle he knew was not insured. Therefore, we affirm in part and vacate in part.

¶ 2    Following a bench trial, defendant, Jose Avila Fierro, was found guilty under an indictment charging two counts of aggravated driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2018)). He was also found guilty of other traffic offenses and the court sentenced

him to 24 months' probation and 10 days in jail. Count I of the indictment alleged the aggravating factor that defendant committed the current offense while his license was suspended or revoked for a prior DUI (*id.* § 11-501(d)(1)(G)), while count II alleged the aggravating factor that defendant knew the vehicle he was driving was uninsured (*id.* § 11-501(d)(1)(I)). Defendant appeals, contending that (1) the arresting officer's inconsistent testimony was insufficient to prove beyond a reasonable doubt that defendant was guilty of DUI; and (2) alternatively, the State failed to prove the aggravating factors beyond a reasonable doubt. We vacate one of the aggravated DUI convictions but otherwise affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The evidence at trial showed that, on June 16, 2018, defendant drove his car into a curb, causing a tire to go flat. After officers responded to the scene and interacted with defendant, they arrested him for DUI.

¶ 5      Officer Sean Bennett testified that he was dispatched to the area of Huntley Road and Tay River Drive. Upon arrival, he noticed a car with its hazard lights on and a flat tire on its front passenger side. One person was in the car, whom Bennett identified as defendant. Bennett's dashboard camera recorded his interaction with defendant. The State played the first 18 minutes of the dashcam video for the trial court.

¶ 6      Bennett testified that he noticed that defendant's eyes were bloodshot. When asked for his license, defendant produced a State identification card. When Bennett asked for proof of insurance, defendant attempted to give him a pay stub and registration paperwork instead of an insurance card.

¶ 7      After running defendant's information, Bennett learned that defendant's license had been revoked. The State offered a certified copy of a driving abstract showing a license revocation in

effect on June 16, 2018. Defense counsel initially stated that he had no objection. However, a short time later, counsel stated, "I don't object for the conviction to enter into the record; however, I would object to the relevance of anything else on that piece of paper." The prosecutor then stated that he had removed two pages from the exhibit, leaving "the sole page on the certified driving abstract." Defense counsel then stated that he had no objection, and the trial court admitted the document.

¶ 8      Bennett continued that, as he walked back to defendant's vehicle, he noticed an empty beer bottle on the passenger seat. He smelled a "light" odor of alcohol. Bennett asked defendant to get out of the car and perform field sobriety tests. Defendant initially denied that he had been drinking, but after Bennett confronted him about the beer bottle, defendant admitted that he had "had a couple."

¶ 9      Bennett testified that he both verbally explained and demonstrated each sobriety test before administering it. The first test Bennett administered was the horizontal gaze nystagmus (HGN) test. Bennett testified that defendant had difficulty keeping his head still during the test. On the dashcam video, Bennett has to remind defendant to keep his head still and move "[o]nly [his] eyes. Ojos." Bennett testified that he observed four "clues" indicating that defendant had consumed alcohol. On cross-examination, he recognized that his police report marked " 'one' " for the total number of clues observed during the HGN test. He also admitted that he neglected to ask defendant whether he had any medical conditions affecting his eyes. On redirect, he noted that his report contained boxes for each clue observed during the HGN test and that four boxes were checked. Asked, then, if the notation " 'one' " for the total number of clues observed was a "misprint," he replied, "Could be."

¶ 10    Bennett testified that, after the HGN test, he asked defendant to perform the one-leg-stand test. Bennett asked defendant if he had any physical problems that would prevent him from performing the test. Defendant did not indicate during any of the tests that he had "any physical ailments that would prohibit him from doing those tests." Bennett testified that, in his demonstration of the one-leg-stand test, he kept his leg straight when lifting it. Defendant never indicated that he did not understand the instructions. In performing the test, defendant lifted his leg straight up and bent his knee. Moreover, defendant was able to keep his leg elevated for only a couple of seconds. Defendant attempted the test three or four times but ultimately was unable to complete it. Bennett testified that defendant exhibited two clues indicating impairment: failing to keep his raised leg straight and "then putting it right back down."

¶ 11    Defendant next attempted the walk-and-turn test. Bennett had defendant walk along a relatively straight crack in the street. According to Bennett, defendant missed walking heel-to-toe on the first step and proceeded to walk 10 steps rather than 9. These were two clues of impairment. On cross-examination, Bennett recognized that his report showed only one clue for the one-leg-stand test and none for the walk-and-turn test.

¶ 12    Bennett testified that he arrested defendant after the tests. However, the arrest was only for driving with a revoked license, because Bennett wanted to "give [defendant] a chance to give a breath sample."

¶ 13    At the police station, Bennett observed defendant for the required 20-minute period. During that time, Bennett observed that defendant's eyes remained bloodshot and he continued to exhibit a "slight" alcoholic odor. Defendant declined a breath test and was charged with DUI. Bennett opined, based on the more than 20 alcohol-related arrests he had made and his ordinary experience, that defendant was under the influence of alcohol.

¶ 14    Officer Paul Kruger testified that he backed up Bennett during the traffic stop. As he walked up to defendant's vehicle, he saw two beer bottles on the passenger side. One had some liquid left in it. He did not collect the bottles as evidence. As defendant exited the car, he dropped his wallet, and Kruger noticed that he appeared "somewhat steady."

¶ 15    The trial court found defendant guilty on both count I (aggravated DUI based on current license revocation for a prior DUI) and count II (aggravated DUI based on knowingly driving an uninsured vehicle). The court also found defendant guilty of two other traffic offenses. The court sentenced defendant to 24 months' probation and 10 days in jail for aggravated DUI. Defendant timely appeals.

¶ 16                                II. ANALYSIS

¶ 17    Defendant first contends that he was not proved guilty of DUI beyond a reasonable doubt. When a defendant challenges on appeal the sufficiency of the evidence, we ask only " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). In a bench trial, it is for the trial court, sitting as the trier of fact, to decide the credibility of the witnesses and the weight to be given to their testimony, resolve conflicts in the evidence, and draw reasonable inferences therefrom. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 233 (2009).

¶ 18    To support a conviction of DUI, the State must prove that the defendant was in actual physical control of a car while under the influence of alcohol. *People v. Tatera*, 2018 IL App (2d) 160207, ¶ 24. The defendant must be under the influence to the degree of being incapable of

driving safely. *Id.* ¶ 25. Circumstantial evidence may be used to prove this; further, the testimony of a single, credible police officer may by itself sustain a conviction of DUI. *Id.*

¶ 19    Here, the evidence, viewed in the light most favorable to the State, was sufficient to prove that defendant drove while intoxicated. Defendant does not dispute that he had been driving the vehicle Bennett encountered; indeed, he was its only occupant. Defendant had apparently driven the vehicle so forcefully into a curb that the right front tire deflated. When Bennett encountered defendant, his eyes were bloodshot and Bennett detected a slight odor of alcohol. The police found two empty beer bottles in the car, and, when pressed, defendant admitted that he had been drinking. He had trouble producing a driver's license and insurance information, instead handing Bennett a State identification card, a pay stub, and registration papers. In exiting the car, defendant was "somewhat steady" and dropped his wallet. Bennett testified that defendant failed all three field sobriety tests. Also, defendant later refused to give a breath test, which the trial court could properly consider as evidence of consciousness of guilt. See *People v. Kane*, 223 Ill. App. 3d 377, 385 (1991).

¶ 20    Defendant contends, however, that Bennett's testimony was "contradicted" by his police report and the dashcam video. Also, defendant complains that Bennett's police report did not list all the "clues" of intoxication that he testified observing during the field sobriety tests.

¶ 21    We will not reverse a conviction simply because the evidence is contradictory or a defendant claims that a witness was not credible. *Siguenza-Brito*, 235 Ill. 2d at 228. Defendant's performance on the field sobriety tests was but one part of the evidence proving defendant's guilt. Moreover, Bennett offered a potential explanation for at least one of the discrepancies between his testimony and report. In any event, that Bennett's testimony differed from his police report created at most a conflict in the evidence for the trial court as factfinder to resolve. See *id.* at 228-29.

¶ 22    Defendant complains of numerous alleged evidentiary shortcomings. Most are adequately explained by the record or are highly speculative. In any event, none is serious enough to require us to disturb the trial court's credibility determinations.

¶ 23    Defendant argues, for example, that Bennett identified as a "clue" defendant's failure to keep his raised leg straight on the one-leg-stand test yet there was no evidence that Bennett instructed him to keep his leg straight. However, Bennett testified that he explained the test verbally and demonstrated it by keeping his raised leg straight, which is corroborated to some extent by the video showing Bennett demonstrating the test—although his entire leg is not visible.

¶ 24    Defendant also asserts that, contrary to Bennett's testimony—that defendant did not inform him of any physical ailments that would prevent defendant from performing the one-leg-stand test—defendant states on the video that he suffered heel pain. However, defendant also said that he was "okay" and agreed to attempt the test. Thus, Bennett's testimony was accurate. Whether defendant's injury contributed to his failing the test was an issue for the trial court to weigh.

¶ 25    Defendant further notes that Bennett testified that he believed defendant understood English, yet Bennett uses one or two Spanish words to explain the tests. Defendant argues that Bennett's "attempts to give [defendant] instructions in Spanish, particularly during the field sobriety tests, indicates that [defendant] may have had difficulty understanding the instructions." We find this simply illogical. That Bennett chose to use one or two Spanish words in an 18-minute video is not probative of whether defendant understood English. The video shows defendant answering questions in English, and he never states that he cannot understand questions because of a language barrier.

¶ 26    Defendant also finds it significant that Bennett did not initially smell alcohol but later noticed only a slight odor. Near the end of the video, Bennett states that he might smell it better at

the station. Bennett admitted that the odor of alcohol was not strong. However, the trial court was aware of these points and could decide how to weigh them.

¶ 27 Defendant makes much of the fact that the officers searching the car discussed that the beer remaining in one of the bottles was warm. Defendant suggests that this raises the possibility that the beer "could have been consumed hours or even days earlier." As the State points out, this exchange occurs at about the 24-minute mark of the video. However, at trial, the video was stopped at about the 19-minute mark. Thus, the portion of the video to which defendant alludes was not in evidence. In any event, defendant admitted to drinking at least "a couple" of beers. Thus, whether he drank from the bottles found in the car that day is simply immaterial.

¶ 28 Defendant also suggests that, because Bennett initially arrested defendant for driving on a revoked license and "[gave] him a chance to give a breath sample," Bennett himself must have doubted that defendant was under the influence. We disagree. In the video, Bennett opines that defendant was too impaired to drive. That he initially gave defendant the benefit of the doubt by allowing him to submit to a breath test is irrelevant to whether defendant was actually impaired. Moreover, defendant's refusal to submit to a breath test may well have confirmed Bennett's suspicions; it was evidence that defendant himself believed he was impaired.

¶ 29 Accordingly, we reject defendant's claim that the State did not prove him guilty of DUI beyond a reasonable doubt.

¶ 30 Defendant's second principal contention is that the State failed to prove him guilty of aggravated DUI on count I because it did not produce evidence that defendant's license was revoked due to a prior DUI. Subsection (d)(1)(G) provides that a defendant is guilty of aggravated DUI if he commits DUI "during a period in which the defendant's driving privileges are revoked

or suspended, where the revocation or suspension was for a violation of subsection (a) or a similar provision." 625 ILCS 5/11-501(d)(1)(G) (West 2018).

¶ 31    In *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000), the United States Supreme Court held that "any fact (other than a prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Defendant argues that the basis for his license revocation was a fact that the State had to prove at trial. Defendant notes that the driving abstract introduced by the State did not show the reason for his license revocation.

¶ 32    The State initially responds that defendant invited the error by objecting to the introduction of the complete abstract, which presumably would have showed the reason for the revocation. See *People v. Alvarado*, 2013 IL App (3d) 120467, ¶ 11 (defendant may not ask the trial court to proceed in a certain manner and then contend on appeal that the order thus obtained was erroneous). In his reply brief, defendant argues that (1) his objection did not relieve the State of its burden of proof, and (2) the prosecutor redacted the document without waiting for a ruling from the trial court. However, we need not decide whether defendant invited an error, because we find no error. That is, we accept the State's alternative argument that it was not required to prove at trial the basis for the revocation.

¶ 33    We note first that there was some evidence of the basis for the revocation. On the video, defendant's wife, who arrived on the scene, can be heard telling Bennett that defendant's license was revoked due to an earlier DUI. Defendant did not object that her comment should not be used to prove the truth of the matter asserted. When hearsay is admitted without objection, the factfinder may consider it and give it its natural probative effect. *People v. Akis*, 63 Ill. 2d 296 (1976).

¶ 34   In *Akis*, the police officer testified that a codefendant, when asked where he had gotten the gun, responded in the defendant's presence that the defendant had given him the gun. The defendant did not object to this testimony. On appeal, the defendant maintained that the officer's testimony concerning that statement was hearsay. The supreme court stated, "A rule of evidence not invoked by timely objection is waived. *** [I]t is sufficient to note that when evidence of that character is admitted without objection it is to be considered and given its natural probative effect." *Id.* at 299.

¶ 35   In any event, as noted, the State was not required to establish at trial the basis for the revocation. In *People v. DiPace*, 354 Ill. App. 3d 104, 114 (2004), this court held that the State "need not prove prior commissions of driving under the influence beyond a reasonable doubt as an element of Class 2 felony driving under the influence." See *id.* at 106 (citing 625 ILCS 5/11-501(c-1)(3) (West 2002)). We relied on section 111-3(c) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/111-3(c) (West 2018)), which allows the State to seek an enhanced sentence because of a prior conviction and "the fact of such prior conviction and the State's intention to seek an enhanced sentence are not elements of the offense and may not be disclosed to the jury during trial" unless relevant for some other purpose.

¶ 36   We also cited *People v. Thompson*, 328 Ill. App. 3d 360 (2002). There, the defendant was convicted of aggravated DUI based on his prior commissions of DUI. The defendant argued, based on the language of the DUI statute, that the State needed to prove the defendant's *commission* of the prior offenses, not just his *convictions*. See *id.* at 364 (citing 625 ILCS 5/11-501(d)(1)(A) (West 1998) (a person convicted of DUI is guilty of aggravated DUI if "(A) the person committed a violation of this Section *** for the third or subsequent time"). Thus, according to defendant, the prior-conviction exception of *Apprendi* did not apply. *Id.* We rejected this argument as placing

form over substance and held that the defendant's prior offenses were the "functional equivalents of prior convictions" under the prior-conviction exception of *Apprendi*. *Id.* We relied on section 111-3(c) of the Code, which provides that prior convictions are not elements of an offense and may not be disclosed to the jury during trial unless relevant for some other reason. *Id.* (citing 725 ILCS 5/111-3(c) (West 1998)).

¶ 37    In *People v. Owens*, 2016 IL App (4th) 140090, the Fourth District followed *DiPace* in holding that the State is not required to prove, as an element of aggravated driving with a revoked license, the fact that the revocation was based on a prior DUI. *Id.* ¶ 39. The court noted that, although *DiPace* did not expressly cite *Apprendi*, its holding was consistent with its principles. *Id.* ¶ 36.

¶ 38    In his reply brief, defendant contends that *DiPace* and *Owens* were wrongly decided. Citing the dissent in *Owens* (see *id.* ¶¶ 47-80 (Appleton, J., dissenting)), he claims there is a distinction between (1) the fact of a prior conviction and (2) the fact that that conviction was the basis for a license revocation. The only justification for *Apprendi*'s prior-conviction exception, he claims, is that the prior conviction itself must have "been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." *Jones v. United* States, 526 U.S. 227, 249 (1999). Thus, he concludes that "any fact that was not established through the same procedures as a prior conviction" is not the functional equivalent of a prior conviction. He also contends that *DiPace* did not even cite *Apprendi*, thus weakening its persuasive force.

¶ 39    We see no reason to depart from *DiPace* and *Owens*. We note that defendant misreads the language quoted from *Jones*. The Supreme Court there observed that recidivism had always played a unique role in sentencing decisions. That the prior conviction must itself have been established pursuant to constitutional guarantees was but "[o]ne basis" for this "constitutional distinctiveness."

*Jones*, 526 U.S. at 249. And while *DiPace* did not cite *Apprendi* directly, it cited *Thompson*, which followed *Apprendi*. *Owens* likewise recognized that *DiPace* did not directly cite *Apprendi* but nonetheless was consistent with it.

¶ 40    Other than the dissent in *Owens*, defendant cites no authority contrary to the foregoing cases. He cites *People v. Bobo*, 2020 IL App (1st) 182628, but that case is readily distinguishable. *Bobo* did not involve an aggravated DUI conviction. Rather, the defendant was convicted of being an armed habitual criminal (AHC). To convict the defendant of AHC as charged, the State had to prove that he possessed a firearm after having been convicted two or more times of any one of several enumerated offenses or a forcible felony. *Id.* ¶ 47 (citing 720 ILCS 5/24-1.7(a) (West 2016)). At trial, the State presented certified copies of the defendant's convictions of intimidation and aggravated robbery. Because aggravated robbery was an offense listed in section 24-1.7(a), the State had to establish that aggravated robbery was a forcible felony. *Id.* Thus, the State had to prove facts beyond the mere existence of the aggravated robbery conviction to prove that it was a forcible felony. *Id.* ¶¶ 53-54. The State failed to do so, and the court vacated the AHC conviction. *Id.* ¶ 54. The court cited an earlier case holding that qualifying prior convictions are elements of AHC. *Id.* ¶ 54 (citing *People v. White*, 2015 IL App (1st) 131111, ¶ 28).

¶ 41    Nothing in *Bobo* casts doubt on *DiPace* or *Owens*. The AHC statute, by its structure, required proof of the prior convictions as elements of the offense. Nothing in *Bobo* requires as a matter of constitutional law or statutory construction that a prior conviction must always be treated as an element of the offense. As the court in *Owens* held, "[a] revocation based on a DUI *** does not need to be proved to the jury," but, rather, "it is reserved for sentencing." *Owens*, 2016 IL App (4th) 140090, ¶ 39.

¶ 42    Defendant's final contention is that the State failed to prove the aggravating factor charged in count II: that defendant knew the car he was driving was uninsured. We agree. The State presented no evidence that the car was uninsured, much less that defendant "knew" this fact. Indeed, in the video, Bennett talks to defendant's wife about removing the car from the scene, and she refers to "the insurance." She told Bennett that she had proof of insurance if he needed it.

¶ 43    The State apparently relies on the fact that defendant was unable to provide proof of insurance when Bennett asked for it. However, failing to provide proof of insurance is a separate offense, with which defendant was not charged. 625 ILCS 5/7-602 (West 2018). "Given that documents may understandably be lost or mislaid," the failure to produce proof of insurance does not in other contexts, such as this one, prove beyond a reasonable doubt the lack of insurance. *People v. Steele*, 366 Ill. App. 3d 220, 223 (2006).

¶ 44    In its brief, the State argues as follows. Because defendant was driving the car, the trial court could presume that he owned it. Further, because his driver's license was revoked, he could not have obtained insurance on the car. Thus, the trial court could properly infer that the car was uninsured. The state's argument is an enthymeme. It presumes that no one else owned the car or had an insurable interest, and ignores the possibility that the car was titled in defendant's wife's name, either alone or jointly with defendant, and that she obtained insurance. Indeed, this appears to have been the case, as she repeatedly referred to insurance.

¶ 45    The aggravated DUI statute requires that the vehicle—not the defendant—be uninsured. The statute provides for an increased penalty when "the person committed the violation while he or she knew or should have known that the vehicle he or she was driving was not covered by a liability insurance policy." 625 ILCS 5/11-501(d)(1)(I) (West 2018). Where statutory language is clear, we apply it as written. *Steele*, 366 Ill. App. 3d at 223. Thus, because there was evidence

suggesting that the vehicle was insured and the State presented no contrary evidence, the State failed to prove the aggravating factor under section 11-501(d)(1)(I). Accordingly, we vacate defendant's aggravated DUI conviction based on knowingly driving an uninsured vehicle. Because the issue of resentencing was not raised and thus was not preserved, we need not address a remand for the court to reconsider its sentence.

¶ 46                                    III. CONCLUSION

¶ 47    We affirm in part and vacate in part the judgment of the circuit court of Kane County.

¶ 48    Affirmed in part and vacated in part.