NOTICE

Decision filed 04/19/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220474-U

NO. 5-22-0474

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Marion County. |
| | ) | |
| v. | ) | No. 21-CF-195 |
| | ) | |
| THOMAS SMITH, | ) | Honorable |
| | ) | Mark W. Stedelin, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm defendant's convictions and sentences for predatory criminal sexual assault of a child, where the evidence was sufficient to support the convictions, defendant's sentences did not violate the proportionate penalties clause of the Illinois Constitution, and defendant's sentences were not excessive.

¶ 2    Following a jury trial in the circuit court of Marion County, defendant, Thomas Smith, was convicted of two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2020)) and sentenced to two consecutive 25-year terms in prison. Defendant appeals, arguing that the State presented insufficient evidence to support his convictions for predatory criminal sexual assault of a child. Alternatively, defendant argues that his sentences for predatory criminal sexual assault of a child violated the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11) and were excessive. For the following reasons, we affirm.

1

¶ 3                                    I. Background

¶ 4      On June 10, 2021, the State charged defendant by information with two counts of predatory criminal sexual assault of a child (*id.*), a Class X felony, (counts I and II) and one count of aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(i)), a Class 2 felony (count III). The State alleged that defendant committed two separate offenses of predatory criminal sexual assault of a child when he, a person over the age of 17, committed an act of sexual contact, however slight, with B.R., a child under the age of 13, by touching B.R.'s vagina (count I) and mouth (count II) with his penis for the purpose of his own sexual gratification or arousal. The State further alleged that defendant committed the offense of aggravated criminal sexual abuse when he, a person over the age of 17, committed an act of sexual conduct with B.R., who was under the age of 13, by touching B.R.'s vagina through clothing with his hand for the purpose of his own sexual gratification or arousal. The State alleged that defendant committed the charged offenses in the time period from July 2020 to December 2020.

¶ 5      On September 30, 2021, the State filed a motion to admit hearsay testimony pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2020)). The State sought to introduce testimony that B.R. made disclosures to her father, Nickolas R. The State also sought to introduce a video recording of B.R.'s forensic interview with Wendi Zobrist at the Amy Center. Following a hearing, the circuit court granted the State's motion, allowing admission of the hearsay testimony and recording of the forensic interview.

¶ 6      On January 11, 2022, defendant's three-day jury trial commenced. The State called Nickolas R. to testify at trial. Nickolas R. testified that he lived in a home with his five children, including six-year-old B.R., and his fiancée, Shelby Ford, in Centralia, Illinois, from July 2020 through December 2020. Nickolas R. and defendant were friends at a younger age but reconnected

when they began working together in July or August 2020. Defendant was a year older than Nickolas R., who was 26 at the time of trial. Between August 2020 and December 2020, defendant came to Nickolas R.'s home between 2 a.m. and 3 a.m. after they finished their work shifts. Defendant slept on the couch or in the recliner at Nickolas R.'s home once or twice a week. Defendant also did laundry at Nickolas R.'s home.

¶ 7　　Nickolas R. testified that his mother watched his children, including B.R., at his home on May 5, 2021. When Nickolas R. returned home on that date, B.R. asked to speak with him in private. B.R. seemed "very off" and "shut down" to Nickolas R. when they began talking. Nickolas R. asked B.R. "what was going on," "[h]ad she seen something, was somebody touching her," and B.R. responded, "Thomas." Defendant was the only "Thomas" B.R. knew. Nickolas R. was shocked by B.R.'s response and asked additional questions. B.R. confirmed that defendant had touched her. B.R. told Nickolas R. that defendant used his hand to touch her vagina over her clothes in the basement of their home. B.R. described defendant reaching down and rubbing her until she said "ow" and him "smack[ing] her away" telling "her to stop it." B.R. explained that defendant took her down to the basement so she could help him do laundry. B.R. also explained that defendant crawled into her bed some mornings and touched her. B.R. stated that the touching occurred "a hundred times." Defendant told B.R. that "what they were doing was a secret, and if she ever told anybody that he would take her to kiddy jail and the big kids would beat her A-S-S." Nickolas R. commonly used the phrase "kiddy jail" when his children failed to obey after placed in time out. Shortly thereafter, Nickolas R. reported the incident to police.

¶ 8　　On cross-examination, Nickolas R. admitted that he used his phone to watch pornography. Nickolas R. also admitted that B.R. used his phone to play games and watch YouTube.

3

¶ 9    Wendi Zobrist then testified on behalf of the State. Zobrist worked at the Amy Center, a child advocacy center that provided support services to sexual and physical abuse victims. Zobrist was employed as a child forensic interviewer for approximately five years. As a forensic interviewer, Zobrist conducted approximately 293 victim sensitive interviews on children who had been victims of potential physical or sexual abuse. Zobrist received special training to conduct forensic interviews and was a certified forensic interviewer.

¶ 10    Zobrist testified that she conducted an interview with B.R. on May 24, 2021. Zobrist recalled that the interview lasted "[a] little over an hour." The interview was recorded and no one else was present, aside from B.R. and Zobrist. During the interview, B.R. disclosed incidents of sexual acts between herself and defendant. B.R. described the incidents in age-appropriate terms. Zobrist identified a CD that contained the recording of the May 24, 2021, interview with B.R.

¶ 11    The recording of the interview was admitted into evidence and played for the jury over defense counsel's objection. During the interview, B.R. expressed an understanding that she was there to discuss defendant. Zobrist advised B.R. that "we only talk about things that are true in here." B.R. stated that defendant did "something bad" to her. B.R. explained that defendant touched her "pee pee," which she described by pointing to her vaginal area and circling the vaginal area on a drawing of a girl. B.R. indicated that defendant used his hand to touch her on the inside of her "pee pee." B.R. stated that defendant took his pants off and showed her his "thing" or "pee pee," which she described by circling the area of a penis on a drawing of a boy. The drawings were admitted into evidence at trial.

¶ 12    During the interview, B.R. stated that she put her mouth on defendant's "pee pee." B.R. stated that she "liked it" and that it felt good. When Zobrist asked B.R. what it tasted like, B.R. responded, "vanilla." B.R. further stated that defendant squirted "white stuff" on her belly and in

4

her mouth, which tasted like vanilla. Defendant told B.R. that it felt good, that he loved her, and that he wanted to marry her when she grew up. Defendant told B.R. "never to tell, otherwise, he'd take [her] to kiddie jail." B.R. explained that the touching occurred in the basement of her home and in her bedroom. B.R. stated that defendant stopped when her mother returned home. According to B.R., the touching occurred over 100 times.

¶ 13    During the interview, B.R. indicated that defendant touched his penis on the inside of her vagina and "butt." When asked to demonstrate the position she was in during the touching, B.R. spread her legs while sitting in the chair. B.R. recalled that Thomas stood in front of her, and his body was "wiggling." B.R. explained that her clothes were off because defendant directed her to take off her clothes. B.R. also indicated that defendant's clothes were off when the touching occurred. When Zobrist asked if anything came out of defendant's penis, B.R. stated, "white stuff." B.R. indicated that the "white stuff" went in her vaginal area, belly, and mouth. B.R. then crawled under the interview room table and began giggling. B.R. stated that she was scared to tell anyone about what defendant had done, but she eventually told her parents.

¶ 14    The State next called B.R. to testify at trial. Prior to her testimony, the circuit court assessed B.R.'s competency outside the presence of the jury. B.R. advised the court that she knew the difference between the truth and a lie, and that she understood that she was "supposed to tell the truth." B.R. knew it was "wrong to tell a lie." B.R. further advised the court that she would tell the truth when she testified at trial. The court took judicial notice of B.R.'s forensic interview with Zobrist. The court determined that B.R. was competent to testify, finding that B.R. "clearly said that she understood telling the truth was what she would do. That telling a lie was wrong."

¶ 15    B.R. testified via closed circuit television. B.R. testified that she was six years old at the time of the trial. B.R. agreed that her father had a friend named "Thomas" who occasionally came

5

over to her house. When the State asked if anything happened between her and Thomas, B.R. responded in the negative. B.R. testified that someone had touched her butt, which she indicated was the front and back of her genital area. B.R. testified that defendant touched the front and back of her butt with his hand, which hurt her. B.R. testified that her clothes were on. B.R. denied that anything came out of defendant's body when the touching occurred. B.R. testified that defendant told her not to tell anyone and that it was "a secret." B.R. told her father about the touching.

¶ 16    On cross-examination, defense counsel showed B.R. copies of the drawings from the forensic interview. When defense counsel asked B.R. if she had seen or drawn on the pictures, B.R. responded, "I don't think I even saw this kind of picture."

¶ 17    The State then rested, and the defense moved for a directed verdict. Defense counsel argued, in part, that the State failed to prove that defendant committed predatory criminal sexual assault of a child as charged in counts I and II because B.R. did not testify that defendant touched her mouth and vagina with his penis. The circuit court denied the motion for directed verdict.

¶ 18    Following deliberations, the jury found defendant guilty on all counts. Defense counsel filed a motion for a judgment notwithstanding the verdict, which the circuit court denied.

¶ 19    On March 22, 2022, the circuit court held a sentencing hearing. The court advised that the sentencing range for count I (predatory criminal sexual assault of a child) was 6 to 60 years in prison, and that the sentencing range for count II (predatory criminal sexual assault of a child) was a mandatory consecutive 6 to 60 years in prison. The court further advised that the sentencing range for count III (aggravated criminal sexual abuse) was three to seven years in prison.

¶ 20    The State asked that the circuit court impose the maximum sentence to deter others from committing similar crimes against children. Regarding the factors in aggravation, the State noted that defendant was 27 years old and that his conduct caused or threatened serious emotional harm

to B.R. The State noted that defendant's criminal history included juvenile adjudications for theft, a crime involving a financial transactional device, criminal damage to government property, and two instances of aggravated criminal sexual abuse. The State further noted that defendant had adult convictions for child pornography, unlawful failure to register as a sex offender, unlawful loitering within a school zone, unlawful communication via use of digital media with a person under 18 years of age, along with various traffic offenses. The State indicated that defendant was on probation when he was charged with the current offenses.

¶ 21     Defense counsel asked that the circuit court impose the minimum sentence. Regarding the factors in mitigation, defense counsel noted that defendant was "not a lost cause," but was a young person who maintained stable employment. Defense counsel maintained that defendant needed "serious psychosexual treatment." Defense counsel noted that defendant did not cause B.R. physical harm.

¶ 22     Defense counsel relied on the presentence investigation report (PSI), which indicated that defendant was sexually abused by a stepbrother from ages 9 to 12. The PSI further indicated that defendant was physically abused by his father at age 12. The PSI additionally indicated that defendant may have witnessed adult sexual acts at age 10, and that defendant lived with his grandmother until it was reported that defendant molested his siblings. According to the PSI, defendant moved to Colorado at age 12 but moved back to Illinois after he engaged in multiple juvenile offenses. The PSI indicated that defendant lived in "many different Children's Homes and Illinois Department of Juvenile Justice facilities until he was [20] years of age."

¶ 23     A 2007 Juvenile Psychosexual Evaluation Report cited in the PSI indicated that defendant had been diagnosed with multiple mental disorders, and that he had been admitted to a psychiatric

hospital on four occasions. The PSI indicated that defendant received no medication or treatment for his mental health as an adult.

¶ 24 Defendant's father testified in mitigation. Defendant's father testified that defendant was normal, polite, and nice. Defendant's father testified that defendant helped him when needed.

¶ 25 After considering the evidence, the circuit court sentenced defendant to two consecutive terms of 25 years in prison, to be served at 85%, for the two counts of predatory criminal sexual assault of a child. The court also sentenced defendant to seven years for the count of aggravated criminal sexual abuse. In imposing the sentences, the court noted that it considered the PSI and defendant's age. The court found various aggravating factors, including defendant's criminal history, the psychological harm suffered by B.R., a need to protect the public, and the necessity to deter others from committing similar crimes. The court found the fact that defendant did not cause B.R. physical harm was a factor in mitigation. The court considered defendant's history of mental illness but noted that defendant failed to seek treatment for his mental issues as an adult. The court found that defendant lacked rehabilitative potential.

¶ 26 On March 25, 2022, defense counsel filed a motion to reconsider the sentence. Defense counsel argued that defendant's sentence was excessive and violated the Illinois Constitution, where it was a *de facto* life sentence that failed to serve the objective of restoring him to useful citizenship. Defense counsel additionally argued that the court failed to adequately consider the evidence in mitigation. The circuit court subsequently denied the motion to reconsider the sentence.

¶ 27 Defendant filed a timely appeal.

¶ 28                                    II. Analysis

¶ 29    On appeal, defendant first argues that the State presented insufficient evidence to sustain

his convictions for predatory criminal sexual assault of a child. Defendant alternatively argues that

his sentences violated the Illinois proportionate penalties clause and were excessive. We address

defendant's arguments in turn.

¶ 30                          A. Sufficiency of the Evidence

¶ 31    Defendant argues that the State presented insufficient evidence to convict him of two

counts of predatory criminal sexual assault of a child. Defendant asserts that the State's evidence

consisted of a prior statement made by the minor victim, which was contradicted by the minor

victim's trial testimony. Defendant further asserts that the State offered no additional corroborating

evidence. We disagree that the State's evidence was insufficient.

¶ 32    "When considering a challenge to the sufficiency of the evidence, a reviewing court must

determine whether, viewing the evidence in the light most favorable to the prosecution, a rational

trier of fact could have found the required elements of the crime beyond a reasonable doubt."

*People v. Sauls*, 2022 IL 127732, ¶ 52. This court will not reverse a conviction on sufficiency

grounds unless the evidence was so "unreasonable, improbable, or unsatisfactory" that, even when

viewed in the light most favorable to the State, no rational trier of fact could accept it as proof

beyond a reasonable doubt. *People v. Ross*, 229 Ill. 2d 255, 272 (2008); see *Jackson v. Virginia*,

443 U.S. 307 (1979). The findings made by the trier of fact regarding the credibility of witnesses,

the inferences to be drawn from the evidence, and the resolution of conflicts in the evidence are

all entitled to significant deference. *Ross*, 229 Ill. 2d at 272.

¶ 33    Section 11-1.40(a)(1) of the Criminal Code of 2012 provides:

"(a) A person commits predatory criminal sexual assault of a child if that person is 17 years of age or older, and commits an act of contact, however slight, between the sex organ or anus of one person and the part of the body of another for the purpose of sexual gratification or arousal of the victim or the accused, or an act of sexual penetration, and:

(1) the victim is under 13 years of age[.]" 720 ILCS 5/11-1.40(a)(1) (West 2020).

While "contact" is not defined in the statute, courts have construed that word to mean "any touching." *People v. Kitch*, 2019 IL App (3d) 170522, ¶ 51. This court recently concluded that the State must prove skin-to-skin contact as an element of predatory criminal sexual assault of a child. *People v. Hubbard*, 2024 IL App (5th) 220628-U, ¶ 115.

¶ 34    In the present case, the evidence demonstrated, and defendant does not dispute, that defendant was over the age of 17 and B.R. was under the age of 13 at the time of the alleged acts of contact. Defendant maintains, however, that the State failed to prove he committed acts of contact between his penis and B.R.'s mouth and vagina. After viewing the evidence in a light most favorable to the State, we cannot say that the State's evidence was insufficient to sustain defendant's convictions.

¶ 35    B.R.'s forensic interview with Zobrist, the admission of which defendant does not challenge on appeal, provided ample support for defendant's convictions. During the interview, B.R. advised Zobrist that defendant touched the inside of her vagina, which B.R. referred to as her "pee-pee," her "butt," and her mouth with his penis, which she referred to as his "thing" or "pee-pee." B.R. stated that the touching occurred in the basement of her home and in her bedroom. B.R. demonstrated how defendant touched her during the forensic interview. Specifically, B.R. spread her legs in the air and stated that defendant's body was "wiggling" while he stood in front of her. B.R. advised Zobrist that her clothes were off because defendant directed her to take her clothes

10

off. B.R. explained that defendant's clothes were off when he stuck his "pee-pee" in her. B.R. advised Zobrist that defendant's penis squirted "white stuff" that tasted like "vanilla" on her belly, mouth, and in her vagina. B.R. stated that defendant told her that it felt good, that he loved her, and that they could get married when she grew up. B.R. stated that she was scared to tell anyone immediately because defendant told B.R. it was a "secret," and she would go to "kiddie jail" if she told anyone. From this evidence, the jury could have reasonably inferred that defendant's penis made skin-to-skin contact with B.R.'s mouth and vagina.

¶ 36    We acknowledge that B.R.'s trial testimony, in some respects, contradicted the statements she made in her forensic interview. However, a victim's account " 'need not be unimpeached, uncontradicted, crystal clear, or perfect in order to sustain a conviction for sexual abuse' " or assault. *People v. Garcia*, 2012 IL App (1st) 103590, ¶ 84 (quoting *People v. Soler*, 228 Ill. App. 3d 183, 200 (1992)). Once the forensic interview was admitted into evidence, "it was the function of the jury to evaluate the credibility of the witnesses and to weigh the evidence accordingly." *People v. Foster*, 2020 IL App (2d) 170683, ¶ 30; see also *People v. Dismuke*, 2017 IL App (2d) 141203, ¶ 42 ("[I]t is the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the evidence."). We cannot say that the inconsistencies between B.R.'s forensic interview and her trial testimony would have prevented a rational trier of fact from placing greater weight on the forensic interview. See *People v. Newton*, 2018 IL 122958, ¶ 24 ("We will not reverse the trial court's judgment unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt.").

¶ 37    Viewing the evidence in a light most favorable to the State, we find it sufficient to demonstrate that defendant's penis made skin-to-skin contact with B.R.'s vagina and mouth.

11

Accordingly, we conclude that the State's evidence was sufficient to support defendant's convictions for predatory criminal sexual assault of a child.

¶ 38                    B. Violation of the Proportionate Penalties Clause

¶ 39    Defendant next argues that his sentences for predatory criminal sexual assault of a child violate the proportionate penalties clause of the Illinois Constitution. We disagree.

¶ 40    As an initial matter, we note that defendant failed to raise this issue in the circuit court, which generally results in forfeiture. See *People v. Jackson*, 2022 IL 127256, ¶ 15. However, as defendant correctly notes, " 'a constitutional challenge to a statute can be raised at any time.' " *People v. Christy*, 139 Ill. 2d 172, 176 (1990) (quoting *People v. Bryant*, 128 Ill. 2d 448, 454 (1989)). Accordingly, defendant did not forfeit review of this issue.[1]

¶ 41    Turning to the merits, we review *de novo* the issue of whether defendant's sentences for predatory criminal sexual assault of a child violate the proportionate penalties clause of the Illinois Constitution. *People v. Johanson*, 2023 IL App (2d) 210690, ¶ 8. "The proportionate penalties clause of the Illinois Constitution provides that '[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.' " *People v. Brooks*, 2022 IL App (3d) 190761, ¶ 11 (quoting Ill. Const. 1970, art. I, § 11).

> "Criminal sentences may be found unconstitutionally disproportionate where (1) the punishment is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community; (2) similar offenses are compared and the conduct that

---

[1]Because we have concluded that defendant did not forfeit review of this issue, we need not address his argument that counsel was ineffective for failing to preserve this issue for review.

results in a less serious threat to the public health and safety is punished more severely; and (3) identical offenses are given different sentences." *Id.*

¶ 42 Here, defendant asserts that the offenses of predatory criminal sexual assault of a child and aggravated criminal sexual abuse have identical elements, but that predatory criminal sexual assault of a child—a Class X felony with a sentencing range of 6 to 60 years in prison (720 ILCS 5/11-1.40(b)(1) (West 2020))—is punished more harshly than aggravated criminal sexual abuse—a Class 2 felony with a sentencing range of 3 to 7 years in prison (*id.* § 11-1.60(g); 730 ILCS 5/5-4.5-35(a) (West 2020)). Thus, defendant maintains that his sentences should be found unconstitutionally disproportionate.

¶ 43 We disagree with defendant's assertion that the offenses of predatory criminal sexual assault of a child and aggravated criminal sexual abuse have identical elements. This court recently compared the elements of each of these offenses and concluded that the State must prove skin-to-skin contact as an element of predatory criminal sexual assault of a child but not as an element of aggravated criminal sexual abuse, which contemplates touching over the clothing. *Hubbard*, 2024 IL App (5th) 220628-U, ¶¶ 113-115. These differing elements are reflected in the State's charging instrument in the present case. Notably, counts I and II (predatory criminal sexual assault of a child) alleged that defendant touched B.R.'s vagina and mouth with his penis, while count III (aggravated criminal sexual abuse) alleged that defendant touched B.R.'s vagina through clothing with his hand. Skin-to-skin contact is more invasive than contact through clothing and, thus, warrants a harsher punishment. Accordingly, we conclude that defendant's sentences for predatory criminal sexual assault of a child did not violate the proportionate penalties clause of the Illinois Constitution.

¶ 44                              C. Excessive Sentence

¶ 45    Lastly, defendant argues that his 50-year sentence, a *de facto* life sentence, for predatory criminal sexual assault of a child was excessive.[2] We disagree.

¶ 46    The circuit court has broad discretionary powers in imposing a sentence, and the court's sentencing decision is entitled to great deference. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). The circuit court is granted such deference because the trial court is generally in a better position than the reviewing court to determine the appropriate sentence. *Id.* The circuit court "has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *Id.* (citing *People v. Streit*, 142 Ill. 2d 13, 19 (1991); *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977)). Accordingly, this court "must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." *Id.* (citing *Streit*, 142 Ill. 2d at 19).

¶ 47    Where, as here, an imposed "sentence falls within the statutory limits, it will not be overturned on appeal absent abuse of discretion." *People v. Bunning*, 2018 IL App (5th) 150114, ¶ 16. "An abuse of discretion occurs only if a sentence greatly varies from the spirit and purpose of the law or where it is manifestly disproportionate to the nature of the offense." *Id.*

¶ 48    In applying these principles to the present case, we cannot say that the circuit court abused its discretion by imposing two consecutive 25-year terms in prison. As noted, defendant was convicted of two counts of predatory criminal sexual assault of a child, a Class X felony, which carried a sentencing range of 6 to 60 years. 720 ILCS 5/11-1.40(b)(1) (West 2020). Thus, defendant's 25-year sentences fell well within the sentencing range.

---

[2]Defendant does not challenge his sentence for aggravated criminal sexual abuse on appeal.

¶ 49 The record reveals that the circuit court considered the statutory factors in aggravation and mitigation. Specifically, the court considered defendant's criminal history as a factor in aggravation. The PSI indicated that defendant committed two aggravated criminal sexual abuse offenses as a juvenile. The PSI also indicated that defendant committed the offenses of child pornography and failure to register as a sex offender as an adult. The court also considered the seriousness of defendant's predatory criminal sexual assault of a child offenses as a factor in aggravation, noting that the sentences were necessary to protect the public from defendant. The court also noted that six-year-old B.R. suffered serious emotional and psychological harm. The court also considered that defendant had a history of mental health issues as a juvenile but noted that defendant neglected to seek treatment as an adult. The court also considered defendant's family history, as contained in the PSI. After considering the evidence and factors, the court concluded that defendant lacked rehabilitative potential. Because the record indicates that the court properly considered all aggravating and mitigating factors, this court will not substitute its judgment for that of the circuit court.

¶ 50 In sum, the circuit court imposed sentences that were well within the statutory limits after considering the statutory aggravating and mitigating factors. We cannot say that the sentence imposed by the court "greatly varies from the spirit and purpose of the law" or that "it is manifestly disproportionate to the nature of the offense." *Bunning*, 2018 IL App (5th) 150114, ¶ 16. Thus, we conclude that the court did not abuse its discretion by sentencing defendant to two consecutive 25-year terms in prison for predatory criminal sexual assault of a child.

¶ 51                                III. Conclusion

¶ 52 For the reasons stated, we affirm the judgment of the circuit court of Marion County.

¶ 53 Affirmed.

15