2026 IL App (1st) 241400-U

No. 1-24-1400

Order filed May 29, 2026

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of Cook County, |
| Plaintiff-Appellee, | ) | Criminal Division. |
| | ) | |
| v. | ) | No. 19 CR 15335 |
| | ) | |
| DONTE GREEN, | ) | Honorable |
| | ) | Laura Ayala-Gonzalez, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1     *Held*: The evidence was sufficient to support defendant's three convictions for predatory criminal sexual assault. The circuit court erred by not conducting an adequate preliminary *Krankel* inquiry before dismissing defendant's *pro se* claims of ineffective assistance of counsel.

¶ 2     Following a bench trial, defendant Donte Green was convicted of three counts of predatory criminal sexual assault (720 ILCS 5/11-1.40(a)(1) (West 2018)) and three counts of aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(i)). At issue is (1) whether there was sufficient evidence to support three convictions for predatory criminal sexual assault where the victim's trial testimony described only two instances of mouth-to-vagina contact and (2) whether the circuit court erred

when it dismissed defendant's *pro se* ineffective assistance of counsel claims because it did not conduct an adequate preliminary *Krankel* inquiry to determine the factual bases of defendant's claims. For the following reasons, we affirm defendant's convictions for predatory criminal sexual assault but remand for an adequate preliminary *Krankel* inquiry.

¶ 3                                   I. BACKGROUND

¶ 4       Defendant Donte Green was convicted of three counts of predatory criminal sexual assault (720 ILCS 5/11-1.40(a)(1) (West 2018)) and three counts of aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(i)) after a bench trial. At trial, the State presented testimony from defendant's daughter, D.E.G., as part of its case-in-chief. At the time of D.E.G.'s testimony in 2023, she was 17 years old.

¶ 5       D.E.G. testified that sometime between December 10, 2014, and March 31, 2016, when she was approximately 10 years old, she was sexually assaulted by defendant, her father, in their Chicago home on two occasions. On the first occasion, D.E.G.'s parents were hosting a party, so she fell asleep watching TV in her parents' bedroom. Later in the night, while D.E.G.'s mother was out of the house, D.E.G. woke up and defendant got into bed with her. Defendant pulled down D.E.G.'s pants and licked the inside of her vagina. Defendant took off his pants and made D.E.G. put her hand on his penis. Defendant asked her to lick his penis, but she refused. D.E.G.'s mother rang the doorbell, and defendant told D.E.G. not to tell anybody what happened. Defendant left the bedroom to open the door, but D.E.G stayed because her grandmother and little sister were sleeping in her bed. After defendant left, she went back to sleep.

¶ 6       The next night, defendant sexually assaulted D.E.G. again. D.E.G.'s grandmother and little sister were sleeping in D.E.G.'s bed, so D.E.G. went to sleep in her parents' bed. D.E.G. placed

her body against the wall and put pillows around her so defendant would not touch her. D.E.G. woke up when defendant slid behind her in bed. Defendant pulled D.E.G.'s bra up, touched her chest, and put her breast in his mouth. Defendant took off her pants and put his mouth on the inside of her vagina. D.E.G. asked to go to the bathroom and sat on the toilet in disgust. When D.E.G. returned to her parents' room, defendant had his pants off and showed D.E.G. a video of D.E.G.'s mother sucking his penis. Defendant put his hand on D.E.G.'s back trying to convince her to do the same, but she kept saying no. At some point, while D.E.G.'s clothes were on and defendant was wearing underwear, he laid on top of her and rubbed his penis on her vagina. Like the first night, the incident stopped when D.E.G.'s mother came to the door.

¶ 7    In March 2016, D.E.G.'s mother moved her and her siblings out of the house they lived in with defendant. Eventually, they moved to North Carolina and D.E.G. did not tell anyone what defendant did to her because she thought she did not need to worry about it anymore. In 2018, however, they moved back to the Chicago area. Then, for the first time, D.E.G. told her mother that defendant sexually assaulted her. On August 9, 2018, D.E.G. went to the Children's Advocacy Center and participated in a recorded forensic interview where she described the details of the sexual assault. The circuit court admitted the interview into evidence under section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2018)).

¶ 8    In the 2018 forensic interview, D.E.G. similarly explained that defendant sexually assaulted her on two occasions. D.E.G. told the interviewer that on the first day, defendant had friends over to their home, so D.E.G. watched TV in her parents' bedroom. While D.E.G.'s mother was out with her friends, defendant entered the bedroom. Defendant pulled D.E.G.'s pants off and licked the inside of her vagina. She asked to go to the bathroom and sat in there for a while trying

to figure out what to do because her grandmother was in her bed. When she returned from the bathroom, defendant continued to lick her vagina. Defendant also pulled down his own pants, grabbed D.E.G.'s hand, and put it on his penis. Defendant asked her to lick his penis and rubbed her back to try to comfort her, but she said no. Defendant got on top of her in his underwear and rubbed his penis on her vagina over her underwear. Defendant stopped when D.E.G.'s mother came to the front door and defendant left to open the door for her. He told D.E.G. not to tell anybody what happened.

¶ 9    On the second day, D.E.G. explained that she slept in defendant's room again, but this time she slept against the wall. She barricaded herself with pillows to try to prevent defendant from touching her. Defendant entered the room and slid behind her in bed. Defendant asked her multiple times to put her mouth on his penis, but she kept saying no. He showed her a video on his phone of her mother sucking his penis, but D.E.G. still refused. Defendant took her shirt off, raised her bra, and sucked on her nipples. D.E.G. asked to go to the bathroom and started crying. Defendant licked the skin of her vagina on this day too.

¶ 10    The State also presented testimony from D.E.G.'s mother, brother, and younger sister. D.E.G.'s younger sister testified that defendant sexually assaulted her too. She participated in a forensic interview on August 9, 2018, the same day as D.E.G., and the video was admitted into evidence. The State rested, and defendant testified in his defense, denying the sexual assault. The parties presented closing arguments, and the circuit court postponed its ruling to review the submitted material, including all exhibits. Later, the circuit court found defendant guilty of three counts of predatory criminal sexual assault and three counts of aggravated criminal sexual abuse but acquitted defendant of one charged count of attempted predatory criminal sexual assault.

¶ 11 After trial, defendant filed a *pro se* motion alleging various ways his trial counsel was ineffective. The circuit court conducted a preliminary *Krankel* inquiry into defendant's allegations. The circuit court read the allegations into the record and asked defendant if "he wanted to be heard on these issues." Defendant said yes but was not given an opportunity to elaborate on his written claims. The circuit court denied defendant's motion. Then, trial counsel asked the circuit court if he could "just address some issues that may arise later in the case." The circuit court allowed counsel to speak on the record, and counsel addressed some of defendant's allegations. The circuit court reiterated that the motion was denied and asked defendant if he wanted trial counsel to continue to represent him on defendant's motion for a new trial. Defendant said yes, and counsel represented defendant at the hearing. The circuit court denied defendant's motion for a new trial and sentenced defendant to a total of 36 years' imprisonment. This timely appeal followed. Ill. S. Ct. R. 606 (eff. Apr. 15, 2024).

¶ 12                                    II. ANALYSIS

¶ 13                          A. Sufficiency of the Evidence

¶ 14 Defendant argues that the evidence at trial was insufficient to support three predatory criminal sexual assault convictions. Defendant argues that the evidence was only sufficient to support two convictions where D.E.G. testified to only two instances of mouth-to-vagina contact at trial. The State argues there was sufficient evidence to support three convictions where D.E.G. described three instances of mouth-to-vagina contact in her video-recorded forensic interview that was admitted into evidence. We review the sufficiency of the evidence by asking whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original

and internal quotation marks omitted.) *People v. Schott*, 145 Ill. 2d 188, 203 (1991). "Where the finding of the defendant's guilt depends on eyewitness testimony, a reviewing court must decide whether a fact-finder could reasonably accept the testimony as true beyond a reasonable doubt." *People v. Gray*, 2017 IL 120958, ¶ 36.

¶ 15 "A person commits predatory criminal sexual assault of a child if that person is 17 years of age or older, and commits an act of contact, however slight, between the sex organ or anus of one person and the part of the body of another for the purpose of sexual gratification or arousal of the victim or the accused, or an act of sexual penetration," and "the victim is under 13 years of age." 720 ILCS 5/11-1.40(a)(1) (West 2018). Defendant was indicted for three counts of predatory criminal sexual assault for "contact between Donte Green's mouth and [D.E.G.]'s sex organ." Defendant only challenges whether there was sufficient evidence to support three instances of such contact, rather than two.

¶ 16 At trial, D.E.G. testified that she was sexually assaulted by defendant on two different days. D.E.G. testified that on the first day, she fell asleep in her parents' bedroom while they were having a party. At some point in the night, she woke up and defendant got into the bed with her. Among other things, he pulled down her pants and licked the inner part of her vagina. The next day, D.E.G. again slept in her parents' bedroom and tried to barricade herself with pillows. She woke up when defendant slid behind her in the bed. Defendant, in part, removed her pants and put his mouth on the inside of her vagina.

¶ 17 In the forensic interview, D.E.G. similarly explained that defendant sexually assaulted her on two occasions, the first of which occurred after defendant had friends over. However, D.E.G. told the interviewer that on this first day, after defendant entered the bedroom and licked the inside

of her vagina, she asked to go to the bathroom and sat for a while trying to figure out what to do. When she returned from the bathroom, defendant continued to lick her vagina. On the second day, D.E.G. similarly relayed how she slept in defendant's room, this time against the wall, barricading herself with pillows. Defendant entered the room and slid behind her in bed where he, in part, licked the skin of her vagina.

¶ 18    Thus, at trial, D.E.G. testified to two instances of mouth-to-vagina contact (once on the first day and once on the second day) and in the forensic interview, D.E.G. described three instances of mouth-to-vagina contact (twice on the first day, before and after she went to the bathroom, and once on the second day). D.E.G.'s forensic interview was admitted as "testimony" under section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2018) (creating a hearsay exception "[i]n a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13" for certain out of court statements made by the victim describing the act)). Any inconsistency in D.E.G.'s testimony, such as between her trial testimony and the forensic interview, was a "question of credibility for the trier of fact to resolve." (Internal quotation marks omitted.) *People v. Dye*, 2026 IL App (4th) 241001, ¶ 58; *People v. Letcher*, 386 Ill. App. 3d 327, 330-31 (2008) ("Our task is not to retry the accused, and we will not substitute our judgment for that of the trier of fact with respect to the witnesses' credibility, the weight to be given to the evidence, or the reasonable inferences to be drawn from the evidence." (Internal quotation marks omitted.)).

¶ 19    After reviewing all the evidence, the circuit court determined that D.E.G. was very credible:

> "It's about the plain and simple fact that you have a child, you're the father of that child, and I have your child, who testified credibly, consistently, and may I say probably

one of the most composed individuals to sit here and relay to this Court the occasions that she had to endure with you as her own father. *** [A]s I indicated not only did she testify credibly, but the truth is really in the details of that testimony that she gave before this Court.

***

And what I have is, I have your own daughter [D.E.G.] describe these incidences to me with a lot of detail ***. And as I go through them, I am going to share some of those details that I found to be of particular interest because I'm the one that assesses the credibility of these witnesses, and I must say that in terms of the demeanor, the composure of [D.E.G.], this Court is assured beyond a reasonable doubt that these actions did, in fact, take place and these crimes were committed against her."

Moreover, despite the five-year time difference, D.E.G.'s trial testimony was largely consistent with her forensic interview. Thus, "[c]onsidering the evidence as a whole, it was not unreasonable for the trial court to credit [D.E.G.'s] earlier statements, which were more proximate in time to when the offenses occurred." *People v. Henson*, 2023 IL App (1st) 230233-U, ¶ 44. Further, "a complainant's testimony need not be unimpeached, uncontradicted, crystal clear, or perfect in order to sustain a conviction for sexual abuse." *People v. Soler*, 228 Ill. App. 3d 183, 200 (1992). Therefore, D.E.G.'s forensic testimony was sufficient to convict defendant of a third count of predatory criminal sexual assault. See *Gray*, 2017 IL 120958, ¶ 36 ("The testimony of a single witness is sufficient to convict if the testimony is positive and credible ***."); see also *People v. Smith*, 2024 IL App (5th) 220474-U, ¶¶ 35-37 (concluding the victim's forensic interview was sufficient evidence to support defendant's convictions for predatory criminal sexual assault despite some contradictions with her trial testimony); *People v. Farris*, 2021 IL App (2d) 190960-U, ¶¶ 76-83 (same); *cf. People v. Gillin*, 2025 IL App (4th) 240212-U, ¶¶ 12-18, 44-51 (reversing one of the defendant's convictions where, at trial, the victim "testified to only the events charged in counts 1 and 3, and not the penis to vagina penetration charged in count 2" and no prior testimony

detailing that count was introduced into evidence); *People v. Genus*, 2024 IL App (1st) 230729-U, ¶¶ 29-38 (reversing one count of predatory criminal sexual assault where, at trial, "the State never elicited any testimony from [the victim] that she was under the age of 13 when [the defendant] put his penis in her mouth" and no prior testimony or facts in the record reasonably supported this inference).

¶ 20    Defendant argues that the State's comments during opening statements and closing arguments that defendant licked D.E.G.'s vagina "on two separate occasions," and the circuit court's comments that D.E.G. "remembers a second time it happened," shows that the State only had sufficient evidence to support two counts. However, it is reasonable to construe these statements as referring to the two separate days on which D.E.G. was sexually assaulted. Moreover, the State's arguments are not evidence. See *People v. Green*, 2017 IL App (1st) 152513, ¶ 98.

¶ 21    Defendant also argues that the circuit court made no mention of the forensic interview in its ruling so it cannot support defendant's convictions. But the "trier of fact in a bench trial is not required to mention everything—or, for that matter, anything—that contributed to its verdict." *People v. Curtis*, 296 Ill. App. 3d 991, 1000 (1998). Further, "[i]f the record contains facts which support an affirmance of the trial court's finding, the reviewing court may take those facts into account even if the trial court did not state it explicitly relied upon them." *Id.* (citing *People v. Bailey*, 265 Ill. App. 3d 262, 278 (1994)). The evidence here is sufficient to support defendant's three convictions for predatory criminal sexual assault.

¶ 22                                    B. Preliminary *Krankel* Inquiry

¶ 23    Defendant argues that the circuit court erred when it dismissed his *pro se* post-trial motion for ineffective assistance of counsel without adequately conducting a preliminary *Krankel* inquiry. Specifically, defendant argues that the circuit court failed to inquire into the details of defendant's claims regarding matters that occurred off the record. The State argues that the circuit court's preliminary *Krankel* inquiry was adequate when the circuit court dismissed defendant's claims based on its own knowledge of the record and defense counsel's input.

¶ 24    "A *pro se* posttrial motion alleging ineffective assistance of counsel is governed by the common-law procedure developed" in *People v. Krankel*, 102 Ill. 2d 181 (1984), "and refined by its progeny." *People v. Roddis*, 2020 IL 124352, ¶ 34. When a defendant makes such a claim, the circuit court must first conduct an adequate preliminary inquiry: one that is sufficient to determine the factual basis of the defendant's claim. *People v. Ayres*, 2017 IL 120071, ¶ 11. If the circuit court "determines that the claim lacks merit or pertains only to matters of trial strategy, then the court *** may deny the *pro se* motion." *People v. Moore*, 207 Ill. 2d 68, 78 (2003). If, however, "the allegations show possible neglect of the case, new counsel should be appointed." *Id.* "The new counsel would then represent the defendant at the hearing on the defendant's *pro se* claim of ineffective assistance." *Id.* We review whether the circuit court adequately conducted the preliminary *Krankel* inquiry *de novo*. *Roddis*, 2020 IL 124352, ¶ 33.

¶ 25    An adequate inquiry is one sufficient to determine the factual bases of the defendant's *pro se* claims of ineffective assistance of counsel. *Ayres*, 2017 IL 120071, ¶ 11. "There is no set format for how an initial inquiry *** should be conducted." *People v. Flemming*, 2015 IL App (1st) 111925-B, ¶ 85. However, "some interchange" between the circuit court and defense counsel is

"usually necessary." *People v. Jackson*, 2020 IL 124112, ¶ 110. The circuit court may also "discuss the allegations with the defendant." *Id*. Additionally, the circuit court is permitted to rely on its own knowledge of defense counsel's performance, but when the claims asserted by the defendant relate to matters de hors the record, it is impossible to fully evaluate them without further development. *People v. Vargas*, 409 Ill. App. 3d 790, 803 (2011); *People v. Curry*, 2018 IL App (1st) 153635, ¶ 12 ("Under *Krankel* and its progeny, the trial court [has] a duty to ascertain the bare facts underlying the claim.").

¶ 26    Defendant's *pro se* motion raised 23 allegations of ineffective assistance of counsel, six of which are at issue on appeal: (1) "counsel fail[ed] to introduce exculpatory evidence or evidence important to the defense strategy," (2) "counsel fail[ed] to consult with client before trial," (3) "counsel misled defendant" and told him "that [he] was going on trial for 1 count of predatory criminal sexual assault, 1 count of attempt predatory criminal sexual assault, and 1 count of aggravated criminal sexual abuse," (4) "counsel fail[ed] to inform defendant of sentences faced," (5) "counsel fail[ed] to impeach witnesses with prior inconsistent statements, evidence of prior perjuries or with any other evidence he knew or should have known about that was effectively impeaching," and (6) "counsel was ineffective for failing to effectively cross-examine the key prosecution witness with inconsistent statements."

¶ 27    At the preliminary *Krankel* inquiry, the circuit court read defendant's claims on the record. Then, the circuit court dismissed the claims without any inquiry to either defendant or counsel:

> "Based on the nature of these issues that you are raising, sir, every single one of these issues that you are raising relate to either a theory or a decision made by an experienced attorney who is representing you in how to proceed with trial strategy as it relates to representing you.
>
> ***

So for those reasons, your motion for ineffective assistance of counsel is denied."

¶ 28   Following the circuit court's ruling, counsel asked if he could "address some issues that may arise later in the case" and discussed some of defendant's allegations on the record, namely: "counsel's failure to consult with client before trial," "failure to inform defendant of sentences faced," "failure to file a response to the state's motion 'proof of prior bad acts,' " "failure to make a motion to exclude prejudicial evidence," and "failure to join charges." After counsel concluded, the circuit court again denied defendant's motion.

¶ 29   Although counsel addressed some of defendant's claims, he did not address all of them, and the circuit court did not inquire into these other claims either. For example, defendant claimed that "counsel fail[ed] to introduce exculpatory evidence or evidence important to the defense strategy." Exculpatory evidence that counsel allegedly did not introduce at trial is inherently a matter outside of the record. The circuit court, thus, could not rely on only its own knowledge of defense counsel's performance to evaluate defendant's claim. "The law requires the trial court to conduct some type of inquiry into the underlying factual basis, if any, of a defendant's *pro se* posttrial claim of ineffective assistance of counsel." *Moore*, 207 Ill. 2d at 79. Yet the circuit court made no inquiry into the factual basis of the claim, such as asking defendant what evidence defense counsel failed to introduce. See *People v. Peacock*, 2012 IL App (5th) 100055-U, ¶ 24 ("Moreover, the defendant's claim that counsel failed to present exculpatory evidence could not be resolved without the type of brief exchange contemplated by our supreme court in *Moore*. Although the allegation lacks detail, a few simple questions could have given the court a better idea of what evidence the defendant claims counsel refused to present, which would have allowed the court to determine whether further investigation was needed."). Thus, the circuit court erred in not

conducting an adequate inquiry: an inquiry sufficient to determine the factual bases of defendant's claims. See *Ayres*, 2017 IL 120071, ¶ 11; *People v. Robinson*, 157 Ill. 2d 68, 86 (1993) ("While defendant's claims may be without merit, the trial court should have afforded the defendant the opportunity to specify and support his complaints. In short, the defendant's motion was precipitously and prematurely denied.").

¶ 30    The State argues that the circuit court did not need to inquire about this claim because it could rely on its own knowledge from trial to assess the likelihood that additional evidence would have changed the outcome of the proceedings. But the circuit court could not make this assessment without knowing what the additional, allegedly exculpatory evidence was. See *Curry*, 2018 IL App (1st) 153635, ¶ 11 (explaining that only after asking a few questions of the defendant or defense counsel to determine the factual basis of an off-the-record claim could the circuit court "have been able to pursue or reject the claim based on its knowledge of the trial").

¶ 31    The State also argues that deciding what evidence to introduce is a matter of trial strategy, so the circuit court did not need more information to reject the claim. While it is true that decisions about "which evidence to present ultimately rest with defense counsel" and have long been viewed "as matters of trial strategy," "defense counsel's failure to present available evidence to support a defense constitutes ineffective assistance of counsel." *People v. York*, 312 Ill. App. 3d 434, 437 (2000); see *People v. King*, 316 Ill. App. 3d 901, 913 (2000) ("[C]ounsel's tactical decisions may be deemed ineffective when they result in counsel's failure to present exculpatory evidence of which he was aware, including the failure to call witnesses whose testimony would support an otherwise uncorroborated defense."). Here, while counsel's decision could ultimately be

considered sound trial strategy, "the trial court must make that determination after an adequate inquiry." *People v. Wesley*, 2013 IL App (1st) 122206-U, ¶ 16.

¶ 32    Lastly, the State argues that any error was harmless because the circuit court would have concluded defense counsel was effective even if a more extensive preliminary inquiry occurred. However, the law is clear that where "the record is devoid of information indicating the nature of defendant's allegations," "we cannot determine whether that error was harmless." *People v. Jackson*, 243 Ill. App. 3d 1026, 1037 (1993); see *Moore*, 207 Ill. 2d at 81 (explaining that when the record is insufficient, "it is simply not possible to conclude that the trial court's failure to conduct an inquiry into those allegations was harmless beyond a reasonable doubt"). By contrast, "[w]here the record shows that the trial court made every effort to ascertain the nature and substance of defendant's ineffective assistance claim, and defendant was allowed to present in detail the factual basis of the claim, failure to appoint counsel can be harmless beyond a reasonable doubt." *People v. Bobo*, 2020 IL App (1st) 182628, ¶ 39. Here, the circuit court did not fully develop the record, and defendant was not able to present the factual bases of his claims despite wanting to be heard. Thus, we cannot conclude whether the error was harmless.

¶ 33    "When the defendant's claims of ineffective assistance of counsel are based on matters outside the record, as they are here, and the trial court failed to conduct an adequate *Krankel* inquiry, the proper remedy is to remand the matter to the trial court for the limited purpose of allowing the trial court to conduct the required inquiry." *People v. Willis*, 2013 IL App (1st) 110233, ¶ 74; *People v. McLaurin*, 2012 IL App (1st) 102943, ¶ 44. Since we conclude that at least one of defendant's claims concerning matters off the record requires a new preliminary *Krankel*

inquiry, we need not address the other five ineffective assistance of counsel claims that defendant argues require a remand.

¶ 34    There is a split in authority on whether it is premature to address the merits of other issues raised on appeal while remanding a case for further *Krankel* proceedings. See, *e.g.*, *People v. Currie*, 2019 IL App (5th) 170038-U, ¶¶ 16, 20. Several cases in this district remand for the circuit court to conduct a preliminary *Krankel* inquiry, yet they conclude the evidence at trial was sufficient for a conviction on the premise that the defendant can still appeal after the *Krankel* proceedings:

> "If, after a hearing, the trial court determines the claim lacks merit or pertains to trial strategy, it can deny the motion. If the claim is determined to have some merit, the court can proceed to a second stage adversarial hearing. If Smith is unsuccessful at either stage, he can appeal if he chooses." See, *e.g.*, *People v. Smith*, 2025 IL App (1st) 220116, ¶ 54.

We follow these cases and conclude that the evidence at defendant's trial was sufficient to find him guilty of three counts of predatory criminal sexual assault, but a new preliminary *Krankel* inquiry is required.

¶ 35                                III. CONCLUSION

¶ 36    Defendant's convictions for predatory criminal sexual assault are affirmed, but the case is remanded for the circuit court to conduct an adequate preliminary *Krankel* inquiry.

¶ 37    Affirmed; but remanded with directions.